Opinion of the Court, by
Judge Mills.
Raleigh, one of the appellees, having purchased of Cates, one of the appellants, four hundred acres ofland, at the price of twenty-seven hundred dollars, and received a deed for the same, filed this hill, enjoining the balanceo!’the purchase money, in the hands of Cates’ remote assignee, and praying that Cates might be compelled to quiet and settle the claims which interfere with the land, or that the contract may be rescinded and set aside.
He charges that Cates represented the land tobe safe and free from dispute, when he knew that there were other claims, which were concealed.
This is denied by the answer, and it seems evident that Cates dealt fairly, and told of all the claims he knew.
The interfering claims which he represents to exist on the land, are, one in the name of George Loft us, interfering with his purchase largely upwards oftwo hundred acres; also, a claim of I wo hundred acres, located for the Barren Seminary, and finally, that (hero is twenty-one acres ofland, contained in his conveyance fr ,m C-f.-s, which wire >><■■< indi fed in Cates’ patent, iiud to which he ÍUí-J. :u tfii-.i.,
r,-, i¡íti run on both «¡df'ofaiargo /'irmtity as'fuTa” iiíp law will al-I0!'’’!1'ott0 a^uvvry is th *° fn^Vg7 a'jui will hot, oi K?vc . position”11 ^
(2I J'0 snP_ 'marked tree in the Hneof anotb-¿ow it«iocation wag valid, or to prove its notoriety; that it was known to a single individual, is not safficient.
*165 Call's finding that Loftus’ claim did cover a proper-lion of the land, made Loftus a partv to his answer, and ottered to interplead with him, to try the merits ol Lot-tus’ claim, which offer was accepted.
On the trial, the court below decided the claim of Loftus to be good for all the land which it covered, and decreed that Cafes should convey his title to Loftus, after receiving it back from Raleigh; that the claim of Gates was .inferior to the Barren Seminary, which interfered; and for these reasons, and because Cates bad no title to twenty-one acres, the injunction was made perpetual, the contract between Cates and Raleigh was get aside, and Cates decreed to repay the purchase money with interest, and account for improvements. From this decree, Cates has appealed.
The first question presented, is, the validity of the location of Loftus, as bis patent is posterior in date to the patents held.by Cates, It is as follows:
“ Christian County Court, May the 14th, 1804..
“ No. 1,923. Squire Larue, is entitled-to 400 acres of land, by virtue of his having settled the same agreeable to an act of Assembly, and located as follows, to wit: Squire Larue locates and enters 400 acres of land in Christian county, on the waters of the Sinking fork of Little river, beginning on a white oak, in John Harges’ line, marked S. L. and running on both sides of a large flat hollow, for quantity, as far as the law will allow', not to interfere with George Brown’s surveys.” '
The location of John Harges, called for in the above claim, is as follows:
“ Christian County Cowl, June Term, 1802.
“No. 606. John Harges is entitled to two hundred acres of land in this'county, by virtue of his having tied the same agreeably to an act of Assembly, and by yirtue of his having located the same, as follows, to wit: Beginning on a post-oak, on a ridge between the Sink-iag Fork and Muddy Fork, marked J. H. and running southwardly and eastwardly for quantitv.”
The Sinking and Muddy forks of Little river, appear to have been well known, containing a considerable space between them, and being not less than twelve miles long. The large fiat hollow, appears also to have been so remarkable and singular in that neighborhood, that it had acquired much noloriei), and all subsequent locators could have known, that in some part of it La- *166 rue intended to locate his claim, including part of But the hollow is, several miles in length, and it is important to know oh what part of it the claim is to lie., George Brown h^d three surveys adjoining each other,, near.one end of the.ho.llow; and although they were not in his name, yet they bore his name, and were understood to be. his, and were notorious as to their situation. Besides, they called to adjoin a survey including the Green Grove, and that Grove was, beyond question, very notorious.
[3] Evidence of circumstances from which it could be inferred, an artificial object called for in an entry might have been known, does not supply the necessity of proof that it was in fact known.
[4] Representations that* the land sold does not interfere with an adverse claim, made under mistake, which it appears on interpleader, does interfere, but is invalid, does not affect the sale.
[5] That,of a tract of 400 acres, ■ 13 1-2 not important to the residue, after sale is discovered to be covered by a superior claim, is no cause for vacating the contract.
(1) Still, however, we have not gotten the true position of Larue’s claim on the hollow; for it does not call to aclj.oin Brown, but indicates that it may possibly reach him in its extension, as far as the. law will allow. Of this, however, it indicates n doubt, and may run its distance on the. hollow and fall far short of reaching h'* Of course, we must go back to Harges’ locatipn, the foundation ofLarue, and tfy if we can there get him a. starting point. It is evident, if iye fail-in this, that, the. entry must fail.
(2) ,To look to the description in Harges’ entry, is, useless. It is a post-oak with letters, on a ridge, in a. large region of country, where were probably many ridges, and certainly many post-oaks.. If this claim can be-found, it must be by information existing dehors the. entry itself. The notoriety of the claim must be proved, and in this there is a failure. A solitary individual, has found and shown it to the surveyor, when these surveys were originally mad.e, and also at making the plats, for the trial of this suit.
(3) It is indeed shown, that there were racé-paths in, this hollow, at which there were frequent convocations, of people, and that this tree stood a few hundred yards from the end of these paths, and that a road or trace, that led from the paths, passed near the tree. These, circumstances might have furnished the means of knowing it; yet still it-rerpained unknown, and there is net proof that it was known.
Indeed, the proof is somewhat contradictory as to the. date when the trees, or one of them in these two entries, were marked, some stating it to have been done, before the locations, and others at the making the survey.
The tree also called for in Larue’s entry, and Har-ges’ line, on which it was to stand, remained equally.obscure.
[6] That part oftlie thtTobjeotsthe per-ch»se, the i^fearod^as covered by an adverse m"' consequence of the vendee i^foAfAAhe vender’s ability to refund, "it thTsale should not bo affected nor blamed is after-wards found to have ' i°c" claim, is neither cause the eon^rac? ' nor discount-log so much as"' notefoAhe balance of tlle Pur°hass m011ej’
[7] It is not rescinda sal? of 400 aerea “Hand, paitiesbe-' lieved the votider had “ghl to all, tenvards dis-tha grants under which fie claimed., did ir't cover the whole bj 21 acres, which was not important to the purchase. Nor would it be a sufficient ground to resist a specilic execution of the contract; for it could be well compensated.
*167 For these reasons, this claim of Larue;, novr held by Loftus, must fail, and the decree of the court below which sustained it and decreed to Loftus the land, is wholly erroneous.
(4) It is evident, that the destruction of this claim removes a weighty incubus from this contract. It is pretty evident, although Cates had heard of this claim fore he sold to Raleigh, yet he was ignorant of its true position; and although it is now ascertained to interfere with the purchase, yét it is as totally harmless, as if it had been avoided.
(5) The next objection to the contract, is the inter-Terence of the Barren Seminary. The whole of this, in two small pieces, is only thirteen acres and one half, with the purchase of Raleigh, not including his improve-'meats, his water or timber, to any serious extent; and from the circumstances proved with regard to this interference, it can be of no aid, either taken by itself or conjoined with other facts, to the complainant below, in enabling him to vacate this contract.
(6) When surveying the land to be sold, prior to any writings between the parties, Cates, at the first approach towardsthis claim, iu running one of the lines, stopped the surveyor, and apprized Raleigh and the party that they were approaching or going into a Seminary claim, which must lie there, but the precise position pf which he did not know, and expressed his intention to keep «lear of it, and sell no disputed land. Raleigh-insisted upon the surveyor continuing the line, and assured Cates he should never blame him, and that he was willing to risk it, as he knew Cates would always he able to restore him the money if he lost it. To satisfy Ra-leigb, and on being assured that he should not be blamed, and that it should not be made an objection to the contract,- Cates permitted the surveyor to proceed, and thus this small interference was produced.
It is true, the entries of Cates on the ground, are not shown to be valid, and the patent of the Seminary claim, now held by Loftus, is the eldest, and, of course, the complaint of Cates against Loftus, to this extent, must be dismissed.
Yet this forms no ground for vacating the whole contract. ■
Nor do we suppose that it furnishes a ground for discounting the price of sp much, agaipst Cuten? *168 ifthécoñtraetisnotset aside. Fdr the value of this interference; Raleigh must be left, on an eviction, to hike his redress ou his warranty, unless he can get clear of this contract on some other ground.
[8] Where the salo of a tract of land conveyed xvith warranty, cannot be rescinded for want'of title to small unimportant parts, not known to either parly until after conveyance, the chancellor will not give compensation for the deficiency, by an injunction against the vendee’s assignee of a note, for the balance of the purchase money: but leave the party to his c immQii law remedy on the warranty
(7) The ouly remaining ground, is the twenty-one acres not included in Cates’ patents, but embraced by Loft us, assignee of Larue. It is rendered very evident, that the including of this piec'e, was a mistake of both parties. Cates was led into it in the following manner: He had a large body of latid contained in numerous small patents, which were supposed to adjoin, and he does not appear to have been acquainted with the boundaries of each. Tne conuectioirwhich he had obtained from the surveyor of the county, represented his surveys to adjoin at this point, when it has been ascertained, by an accurate survey since this suit commenced, that there is a small vacuum between two of them, which forms this quantity. On this discovery being made, the complainant below amended his bill,-and took it along as a make-weight, and it formed no part of his complaint when be began.
If, in feeling for equity against this contract, he has got hold of this, can it relieve him from the contract?
The piece is not taken out of the middle of his purchase, but from one of its extremes, distant from his residence, leaving the rest in convenient form. It does not appear to include either wood or water, orto be of any serious injury to the purchaser, and it is, therefore, improbable and unreasonable to suppose, that if known at the date of the contract, it would have prevented ifo According then to well settled principles, equity ought not to vacate the contract on this account, especially where it has been executed by a conveyance, and even in executory contracts, it could, utmost, only entitle the vendee to compensation.
(8) As the contract cannot be set aside on this account, the question arises, can Raleigh be entitled to compensation fertile deficiency, deducted out of the balance of the purchase money due to the assignee of Cates, This piece is included in the deed with warranty, from Cates to llaieigh, and when an eviction takes place as to this piece, the remedy on the warranty at law, is plain and easy. Cates, or his assignee, holds the security for the purchase money, and Raleigh holds a covenant of warranty, pn which he relied,, and *169 which is fully adequate to redress any injury he may sustain by an eviction. Ought the chancellor, in this case, to interfere, and discount one of these purely legal claims against the other? We conceive not; and Raleigh must be left to his remedy on his warranty.
[9] In a suit to rescind a sals of land for defect of title to part, the chancellor will not relieve the complainant for a mistake in the defendant’s conveyance to him, disclosed in the answer, and there offered to be correct-, ed, but of which nothing had been said in the bill; nor for this cause, regard the con-tractus exec-utory; But will leave the complainant to his new bill, in case the defendant should afterwards -refuse*to correct the deech.
Bibb and Crittenden, for appellant; ¡Sharp, fittorney-general, for appellee.
(9) One other point has been made in argument. A mistake exists in the first deed from Cates to Raleigh, in the seventh and ninth lines, and if their courses are followed, the lines of the survey will never close. On discovering this, Cates executed and tendered to Raleigh another conveyance, correcting the mistake of the first. This deed Raleigh refused to accept, as (his suit was then progressing. Cates relates this circumstance in his answer, and it is stated in the proof.
it has been suggested that Raleigh ought riot to be considered as holding an executed contract, but as without a conveyance, and, of course, not bound to carry the contract into effect, and as having a right to avoid it on account of mistakes, as ifit was executory.
To this we reply, that Raleigh has not noticed or relied on this in his bill, or numerous amended bills. He neither seeks to correct this mistake, nor avoid the contract on account of it. We cannot, therefore, relieve him of that against which he does not complain, and shall leave him, if Cates hereafter will not-correct this matter, to a new bill for that purpose.
The decree must, therefore, be reversed with costs, both as. to Loftus and Raleigh, and the cause be remanded, that a decree may be entered dissolving the injunction and dismissing the bill of Raleigh with damages and costs, and decreeing Loftus to release to Cates the interference between Larue’s claim and the purchase of Raleigh, with costs.